STATE of Minnesota, Respondent,

v.

Clarence MEAT, Appellant.

No. C6–86–632.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Thomas J. Keyes, Beltrami Co. Atty., James R. Wilson, Asst. Co. Atty., Bagley, for respondent.

Richard M. Meshbesher, Meshbesher, Meshbesher & Rauer, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

A jury convicted Clarence Meat of criminal sexual conduct in the third degree for forcible penetration of his ex-wife, KSM. Meat appeals and we affirm.

## FACTS

Clarence Meat and KSM met and lived together in Oklahoma as common-law husband and wife. In 1983, because of Meat's frequent physical violence, KSM and their two children moved to Minnesota. Meat visited KSM in Minnesota, and in 1984 a third child was born. Meat moved to Minnesota shortly thereafter, but the couple did not reconcile. KSM began proceedings to dissolve their Oklahoma common-law marriage and obtained a restraining order in June 1984 to prevent Meat from entering her home. Meat ignored the order and continued to visit KSM and the children. KSM obtained a second restraining order in April 1985.

On July 10, 1985, KSM called police to remove Meat from her home. He then left voluntarily. Afraid he would return, KSM spent the night at a friend's house. The next day, Meat appeared inside KSM's house while she was feeding her children breakfast. Meat asked to talk to her and she refused. He grabbed her, took her into the bathroom, and pinned her between the sink and toilet. She was able to escape only after one of the children came into the bathroom, crying.

Meat then forced her into the bedroom, pushed her onto the bed, and pulled her pants down. He put his hands over her mouth to muffle her screaming and threatened to sodomize her if she did not cooperate. He then penetrated her vagina, apparently ejaculating, although KSM was unsure.

Meat left shortly after the attack. KSM gathered her children and went to the law enforcement center to ask why the restraining order had not been enforced. From the center she went to a battered women's shelter, and from there to the hospital, where she received a sexual assault examination. After being examined at the hospital, KSM returned to the law enforcement center to formally report the crime.

At trial KSM testified to Meat's past acts of physical abuse and nonconsensual intercourse. She also testified that she had no sexual contact with anyone other than Meat prior to the date of the attack.

The BCA crime laboratory expert testified that the sperm samples from the sexual assault examination showed two different sources, only one of which could have been Meat.

Meat testified that he was not in Minnesota the entire weekend of the assault. He later recanted when impeached with a police report placing him in Bemidji the day before the incident.

## ISSUES

1. Does the evidence support appellant's conviction of criminal sexual conduct in the third degree?

2. Did counsel's failure to request limiting instructions on the *Spreigl* evidence deny appellant the right to effective assistance of counsel?

## ANALYSIS

### I

■ In reviewing a claim of sufficiency of the evidence, we evaluate whether,

based on the evidence, a jury could reasonably conclude the defendant was guilty. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). "A person is guilty of criminal sexual conduct in the third degree if he engages in sexual penetration with another person and * * * uses force or coercion to accomplish the penetration." Minn.Stat. § 609.344, subd. 1(c) (Supp.1985).

KSM testified that Meat's assault culminated in forcible penetration. KSM's testimony on Meat's actions was explicit and unequivocal. Her claim of force was supported by the presence of red marks around her neck and jaw which were still visible when she arrived at the hospital. The evidence also shows that Meat violated previous restraining orders and forced KSM to have intercourse on two prior occasions.

Meat submits that the BCA lab report is exculpatory and requires reversal of his conviction. We agree that the test results conflict with KSM's testimony that she had sex with no one but Meat prior to the assault. However, inconsistencies in the State's case will not require a reversal of the jury's verdict. *State v. Lloyd*, 345 N.W.2d 240, 245 (Minn.1984). The semen analysis does not exclude Meat as a contributor, nor is the presence of semen necessary to support the claim of penetration. Viewing the evidence in the light most favorable to the verdict, *State v. Wahlberg*, 296 N.W.2d 408 (Minn.1980), we believe the jury could reasonably conclude that Meat was guilty of third-degree criminal sexual conduct.

## II

Meat also claims he was denied effective assistance of counsel because his attorney failed to request a limiting instruction after the State introduced *Spreigl* evidence. A limiting instruction on *Spreigl* evidence should be given at the time the evidence is admitted and at the close of trial. *See State v. Forsman*, 260 N.W.2d 160, 169 (Minn.1977). However, failure to do so is not necessarily reversible error. *Id.*

Under the principles of *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065 (1984), a claim of ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068. The evidence of guilt is sufficiently strong that a failure to give a limiting instruction on the *Spreigl* evidence is not likely to have affected the outcome.

### DECISION

Affirmed.